MERIWEATHER AND ALS.

*v.*

SHIFLETT AND WIFE.

(*Supreme Court of Appeals of Virginia, April, 1881.*)

[Virginia Law Journal, 1881, p. 251.]

### Partnership—Right of One Member to Borrow Money in Firm Name—Partnership Agreements—Notice of Lender.

One member of a commercial firm may borrow money in the name of the firm, and bind the firm, unless restricted by the partnership agreement of which the lender had notice.

### Same—Same—Case at Bar.

C., as guardian of W., put money of his ward in the hands of S., of the firm of S. & R., to be loaned out. The money was taken by S., used in the business of S. & R., and the note of the concern given for it. R. died, and his distributees claimed that the loan was to S. individually, and used by him and not by the firm of S. & R. On a bill by the ward and her husband to subject the estate of R. to the payment of the note: *held*, it was liable.

### Evidence—Competency of Witnesses—Statutes.

Under the act approved April 2d, 1877, C. and S. are competent witnesses notwithstanding the death of R.

This was a bill filed by Thomas W. Shiflett and Willie M., his wife, who was Willie M. Perkins, assignee of C. O. Perkins, her late guardian, who sue on behalf of themselves and all other creditors of William J. Ragland, deceased, against Philip G. Seay, surviving partner of the late firm of P. G. Seay & Co., and as ex'or of said Wm. J. Ragland,

deceased. Mary Agnes Meriweather, Jarvis Perman Wynne, and Nannie James Wynne, his wife, Charles F. Whittle, and Mary Adeline Whittle his wife, James Edward Meriweather and John Meriweather, the last seven of whom are the residuary legatees and devisees under the will of the said Wm. J. Ragland, deceased, to subject said Ragland's estate to the payment of a note for $1,530, executed by P. G. Seay & Co. (which was a commission house in the city of Richmond, composed of said Seay and Ragland, in the lifetime of the latter), to C. O. Perkins, the father and late guardian of Willie M. Shiflett (late Perkins), and assigned by her guardian to her in the settlement of the guardian's accounts. The circumstances under which the money was borrowed, the making of the note, and the uses to which the amount was applied are sufficiently stated in the opinion of the court for a proper understanding of the points decided. The chancery court held the estate of Ragland liable for the debt, and an appeal was allowed from that decree by one of the judges of the court of appeals.

*John Johns* and *James M. Matthews,* for the appellants.

*Wise & Cosby* and *John O. Steger,* for the appellees.

ANDERSON, J., delivered the opinion of the court.

The court is of opinion that the decree of the chancery court is plainly right. One member of a commercial firm may borrow money in the name of the firm and bind the firm for it, unless restricted by the partnership agreement, of which the lender had notice.

In this case it appears that the money was borrowed from C. O. Perkins, guardian of Willie M. Perkins, by P. G. Seay, a member of the firm of P. G. Seay & Co., in the name of

said firm, which was composed of the said Seay and William
J. Ragland.   The said Ragland has since departed this
life, and by his will bequeathed his estate to the appellants.

The money was put in the hands of said Seay individually,
as early as the 24th of March, 1875, to be lent out by him
for the guardian on good security, upon consultation with
Mr. Sands, an attorney.   It seems that Mr. Sands was sick,
and absent from the city, and Seay deposited the money,
$1,530, in the Bank of Commerce to his individual credit.
Some two or three months afterwards, not seeing Mr. Sands
for consultation, he determined to make temporary loans of
it upon his own responsibility, and accounted for the interest
he received, as shown by his letter to Mr. Perkins on the
19th of February, 1876, when he enclosed to him the note
of his firm for the principal sum.   He tells him that as
Willie said she would not want any money before November
next, they concluded they could use it or a part of it to an
advantage, and sent their note for the whole amount (which
he miscalls a bond), and that if he was not good for it,
Ragland, his partner, was, and assures him that the security
was undoubted.   C. O. Perkins accepted this note, and
assigned it to his ward in settlement of his guardianship
accounts.   She afterwards married Shiflett, and this suit
was brought upon it by them jointly.

There is nothing in the record to shew that there was any
restriction of the right of Seay, as a co-partner of Ragland,
to borrow money for and in the name of the firm, or to sug-
gest to Perkins that Seay was not acting *bonâ fide* within
the scope of his authority in borrowing the money in the
name of the firm of P. G. Seay & Co., and for the use of
said firm.   It was not, therefore, incumbent on the plaintiffs
to show that the money was actually used for the said firm,
in order to establish its liability, and of each member of it,
for its payment.

But this, in fact, appears to have been shown. It appears that an accepted draft of James Galt on P. G. Seay & Co., for $720.23, payable at the Merchants' National Bank, was paid on the 24th of February, 1876, and charged to the individual account of P. G. Seay at the Bank of Commerce on the 25th day of February, 1876 ; that the note of P. G. Seay & Co. for $393.55 was paid at the Merchants' National Bank February 19th, 1876, and charged to P. G. Seay's individual account at the Bank of Commerce February 21st, 1876 ; and that the note of P. G. Seay & Co. for $456.25, was paid at the Merchants' National Bank March 20th, 1876, and charged to the individual account of P. G. Seay at the Bank of Commerce March 21st, 1876. These sum up $1,572.03, and show that P. G. Seay, between the 19th of February and the 21st of March, 1876, had paid for his firm a little more than it had borrowed from C. O. Perkins, guardian. This cotemporaneous written evidence fully confirms the oral testimony of P. G. Seay, that the money was borrowed from Perkins by the firm of P. G. Seay & Co., and used for it.

It matters not that the notes paid by P. G. Seay were given by P. G. Seay & Co. to Gibson & Brock in exchange for notes given by them to P. G. Seay & Co., and that James Galt's draft was afterwards paid by him to P. G. Seay & Co. It conclusively appears that when they fell due they were paid by P. G. Seay out of the money which was to his individual credit in the Bank of Commerce, and when the said parties afterwards paid them to P. G. Seay & Co., the money which they so paid became the money of the firm, and not of P. G. Seay individually, and was doubtless used by the firm in its business.

Exceptions, it is said, were taken to the competency of P. G. Seay and C. O. Perkins to testify in the cause by reason of the death of Wm. J. Ragland. We are of opinion that

by the amendment of the law by the act of assembly approved April 2, 1877 (Acts of Assembly of 1876–77, p. 265), both of said witnesses were clearly competent.

The court is of opinion that there is no error in the decree of the chancery court, and to affirm the same with costs.

Decree affirmed.